FILED
United States Court of Appeals
Tenth Circuit

May 2, 2016

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

THOMAS J. GALLEGOS,

     Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

     Defendant - Appellee.

No. 15-3216
(D.C. No. 6:14-CV-01147-DDC)
(D. Kan.)

_____

ORDER AND JUDGMENT[*]
_____

Before **BRISCOE**, **LUCERO**, and **PHILLIPS**, Circuit Judges.
_____

Thomas J. Gallegos appeals from an order of the district court affirming the

Commissioner's decision denying his application for disability insurance benefits.

Because the agency applied the correct legal standards and its factual findings are

supported by substantial evidence, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

*Background*

Upon the agency's initial denial of his application, Mr. Gallegos requested a hearing before an administrative law judge (ALJ). Mr. Gallegos alleged disability at age 32, following fourteen years in the Army. During his first tour of duty in Iraq in 2003, which lasted six months, he injured his back and suffered a traumatic brain injury as a result of a rocket launcher explosion. Although Mr. Gallegos did not suffer any physical injuries during his second tour of duty, which was approximately sixteen months, he said that he experienced stress from "the overall effect of being in a combat zone and just remembering from what happened from the previous time." Aplt. App., Vol. 1 at 52. In February 2011, approximately two years after he returned from his second tour of duty, he left the military. Mr. Gallegos filed for benefits alleging the onset of disability in January 2011.[1] At the time of his administrative hearing, he was in his third semester at Butler Community College, where he was taking four courses, three days a week.

According to Mr. Gallegos, he suffers greatly from back pain, which radiates down both legs and renders his feet numb. He also has degenerative joint disease in his right knee. He takes Lortab for pain.

His mental health issues arose shortly after he returned from his second tour of duty in Iraq. Although Mr. Gallegos received a promotion, he did not like his office job and missed being the member of a rocket launcher team. In his mind, he "was

_____

[1] Mr. Gallegos initially claimed that he became disabled in March 2010, but at the administrative hearing he amended his alleged onset date to January 2011.

2

just pretty much downgraded to nothing." *Id*. at 62. As a consequence, he developed anger issues, which made it difficult for him to be around other people and often caused him to go to a "getaway room," to avoid "going off on something or somebody." *Id*. at 63. He told the ALJ that he had received individual therapy in the past, and was currently taking Cymbalta, attending weekly group therapy sessions, and meeting once a month with a psychologist.

Following the hearing, the ALJ issued a decision denying benefits. She determined that Mr. Gallegos has the following severe impairments: "degenerative disc disease, degenerative joint disease of the right knee, obesity, organic brain syndrome, and post-traumatic stress disorder," and the non-severe impairments of "obstructive sleep apnea," *id*. at 29, and "Dandy-Walker syndrome, a congenital malformation of the brain, involving enlargement of the fourth ventricle," *id*. at 30. At step three, she concluded that these impairments or combinations do not "meet[] or medically equal[] the severity of one of the listed impairments." *Id*. After considering the entire record, the ALJ found that Mr. Gallegos retains the residual functional capacity (RFC) to perform sedentary work, with several limitations.

Based on the testimony of a vocational expert, the ALJ found that although Mr. Gallegos could not perform any of his past relevant work, there were several jobs in significant numbers in the national economy that he could perform and he was therefore not disabled. The Appeals Council denied review. The district court affirmed the Commissioner's decision and Mr. Gallegos now appeals.

## *Standard of Review*

"We review the district court's decision de novo and independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). "At the third step, we [will] consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix I of this subpart and meets the duration requirement, we will find that you are disabled." 20 C.F.R. § 404.1520(a)(4)(iii). *See also Fischer-Ross*, 731 F.3d at 731 ("Step three asks whether any medically severe impairment, alone or in combination with other impairments, is equivalent to any of a number of listed impairments so severe as to preclude substantial gainful employment." (internal quotation marks omitted)).

Mr. Gallegos argues that the ALJ should have found him per se disabled at step three of the five-step sequential evaluation process because: (1) he met the criteria of Listing 1.04 (disorders of the spine); (2) he met the criteria of Listing 12.06 (anxiety related disorders); and (3) his impairments were medically equivalent to Listing 12.06.[2]

## *Listing 1.04*

At step three, Mr. Gallegos was required to demonstrate that his impairments met the criteria listed in 20 C.F.R. Part 404, Subpt. P, App. I, § 104 (disorders of the

_____

[2] Mr. Gallegos states that his first issue on appeal is whether the ALJ's decision is supported by substantial evidence. He puts a finer point on the issue in his summary of arguments and the arguments themselves in framing the issue as whether the ALJ's findings that his impairments did not meet or equal a listing are supported by substantial evidence. *See* Aplt. Opening Br. at 3-4, 6.

spine).  We have examined Mr. Gallegos' district court brief and find no argument concerning whether he met or equaled Listing 1.04.  Therefore, the issue is waived. *See Berna v. Chater*, 101 F.3d 631, 632-33 (10th Cir. 1996) (holding that a social security claimant waives any issues not raised in district court).

### *Listing 12.06*

To meet Listing 12.06 for anxiety related disorders, the claimant must establish that he meets the criteria of subsections A and B, or A and C.  20 C.F.R. 404, Subpt. P, App. I, § 12.06.  Mr. Gallegos asserts that he met the criteria of A.5 because his anxiety involves recurrent and intrusive recollections of his combat experiences in Iraq, which in turn cause marked distress.  *See id.* at A.5.  Assuming without deciding that Mr. Gallegos met subsection A.5, the ALJ's decision that he did not meet the criteria of either subsections B or C is supported by substantial evidence.

To meet the paragraph B criteria, the applicant must demonstrate that his anxiety related disorder "[r]esult[ed] in at least two of the following:  1.  Marked restriction of activities of daily living; or 2.  Marked difficulties in maintaining social functioning; or 3.  Marked difficulties in maintaining concentration, persistence, or pace; or 4.  Repeated episodes of decompensation, each of extended duration."  *Id.* at B.1-4.  To meet the paragraph C criteria, the applicant must demonstrate a "complete inability to function independently outside the area of [his own] home."  *Id.* at C.

With regard to paragraph B, the ALJ concluded that Mr. Gallegos had only mild limitation in activities of daily living, moderate limitations in social functioning

5

and concentration, persistence or pace, and no episodes of decompensation of extended duration, which are defined as "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id*. § 12.00C.4. And the ALJ found that Mr. Gallegos did not meet the C criteria because there was no evidence of a complete inability to function outside his home.

According to Mr. Gallegos, the ALJ should have given controlling weight to an opinion from his treating psychologist, Robert A. Johnson, which he argues established that he met the paragraph B criteria. We need not address whether the ALJ should have given controlling weight to Dr. Johnson's opinion, because it *does not* establish the presence of at least two of the B criteria.[3]

Dr. Johnson's opinion found only moderate limitations in activities of daily living and maintaining social functioning. Although he found that Mr. Gallegos "[o]ften" experienced deficiencies in concentration, persistence or pace that delayed his timely completion of tasks, he did not find any marked limitations in this category. *See* Aplt. App., Vol. VII at 1909. Dr. Johnson did check the box "Repeated" concerning episodes of deterioration or decompensation. That term, however, was defined in the form as "Episodes of Deterioration or Decompensation in Work or Work-like Settings Which Cause the Individual to Withdraw from that Situation or to Exacerbation of Signs and Symptoms (which may include

---

[3] The ALJ gave Dr. Johnson's medical source opinion "little weight," because his "assessment is not supported by [Mr. Gallegos'] treatment records, which show only mild cognitive deficits, and overall average intellectual functioning, and which document no instances of sustained decompensation." Aplt. App., Vol. I at 36.

6

Deterioration of Adaptive Behaviors)." *Id.* As explained above, the term "repeated episodes of decompensation, each of extended duration" has specific definition in determining whether a claimant meets the requirements of Listing 12.06B. In addition to the fact that Dr. Johnson's opinion does not meet the criteria, Mr. Gallegos has failed to identify any other evidence that meets the definition.

In sum, even if Dr. Johnson's opinion regarding concentration, persistence or pace could be interpreted as a "marked" limitation, his report fails to establish the presence of any other B criteria. And because Mr. Gallegos does not argue that he met the paragraph C criteria, we do not address the issue.

Mr. Gallegos' further apparent argument is that a single GAF[4] score was sufficiently low to meet the requirements of Listing 12.06. He cites to a June 2001 evaluation, when he received a score of 50, which is indicative of "serious impairment in social, occupational, or school functioning." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed. 2000). His five other GAF scores, however, ranged from 60 to 68, which indicated only moderate to mild difficulties. *See id.* He cites no authority that single GAF score is sufficient to meet the criteria of a listing, but more to the point, this one-time score is at odds with the medical evidence, including the opinion of his own

---

[4] The GAF is a subjective determination using a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed. 2000).

7

psychologist, who found *no* marked limitations in any of the paragraph B criteria. *See* Aplt. App., Vol. VII at 1909.

Last, Mr. Gallegos argues that the ALJ should have afforded more weight to the statements by his mother-in-law, Maria Girone, and had the ALJ done so, the statements would have established that he met Listing 12.06. We disagree.

As a preliminary matter, the regulations provide that whether a claimant meets a listing must be established by *medical evidence*. *See* 20 C.F.R. 404, Subpt. P, App. I, § 12.00B. Ms. Girone is not a medical source. And even if Ms. Girone's observations were entitled to more than the "little weight" attributed to them by the ALJ, Aplt. App., Vol. I at 36, they did nothing to establish that Mr. Gallegos met the paragraph B criteria. For the most part, Ms. Girone wrote about her son-in-law's activities of daily living, which she observed sporadically. In this regard, she stated that Mr. Gallegos could perform some light household chores, do laundry, prepare light meals, drive, go shopping, watch television, read sports stories, spend time with other people, and get along with authority figures. She did, however, describe some limitations regarding his ability to dress and bathe himself, perform yard work, and play sports. According to Ms. Girone, it was difficult for him to pay bills and he was anxious and withdrawn in social situations.

The regulations provide that "[w]here we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme." *Id*. § 12.00C. Although a marked limitation may arise "even when only one [activity or function] is impaired, . . . the degree of limitation [must be] such as

8

to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.* Ms. Girone's comments, at best, support the medical evidence that Mr. Gallegos had only mild or moderate symptoms in regard to the paragraph B criteria.

### *Medical Equivalency*

Mr. Gallegos attacks the ALJ for "fail[ing] to make a thorough [medical] equivalency determination." Aplt. Opening Br. at 17. In particular, he argues that if the ALJ had done so, she would have been compelled to conclude that Mr. Gallegos' disorder of the spine was medically equivalent to Listing 1.04, because there were other findings related to this listing that were at least of equal medical significance to the required criteria. *See* 20 C.F.R. § 404.1526(b)(1). But as we explained previously, Mr. Gallegos failed to raise in the district court whether he met or equaled Listing 1.04. Thus, the issue is waived. *See Berna*, 101 F.3d at 632-33.

Mr. Gallegos' argument that his impairments are medically equal to Listing 12.06 is without merit. Although it is the Commissioner's decision that is under review, we find the district court's comments about Mr. Gallegos' argument on this issue informative:

> [Mr. Gallegos'] brief does not identify which listing-level condition he believes his impairments equaled. Nor is it possible for the Court to identify such listings based on the arguments or facts [Mr. Gallegos] asserts to support his appeal. [His] brief simply lists his many medical conditions and asserts that, surely—given such a long list of conditions—the Court can find a reversible error somewhere in the ALJ's medical equivalency analysis. But it is not the Court's job to scour the record to develop [Mr. Gallegos'] argument for him.

9

Aplt. App., Vol. VII at 2032. Nonetheless, the court determined that Mr. Gallegos had mustered enough of an argument (barely) for it to consider whether his impairments were medically equal to Listing 12.06.

On appeal, Mr. Gallegos has provided the identical laundry-list of impairments—albeit with record citations—that he listed in the district court. But his argument still suffers from the same deficiency—he fails to explain how any of the impairments on the list, such as disc disease, obesity, and sleep apnea have anything to do with Listing 12.06. And as to those impairments that are arguably relevant, such as depression or post-traumatic stress disorder, Mr. Gallegos does not explain how they are of equal medical significance to the required criteria. The failure to adequately present the issue on appeal forecloses review. *See Berna*, 101 F.3d at 632. *See also Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (recognizing that undeveloped arguments are insufficient to invoke appellate review).

In any event, the ALJ's equivalency analysis was more than adequate. *See* Aplt. App., Vol. I at 30-32. The fact is that although Mr. Gallegos suffers from several impairments, there is no evidence that any of these impairments, alone or in combination, medically equaled any of the paragraph B criteria of Listing 12.06.

The judgment of the district court is affirmed.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

10